UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-735H

MICHAEL CLARK, et al.,                                      PLAINTIFFS

V.

BELLSOUTH TELECOMMUNICATIONS, INC.,                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs, Michael Clark and others are customers of BellSouth Telecommunications, Inc., ("BellSouth").  In this federal complaint they seek reimbursement for Kentucky sales tax on DSL Internet access services which they contended BellSouth wrongfully collected.  They assert both common law claims of conversion and fraud as well as statutory claims under the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367 (2006), and the Civil Rights Act, 42 U.S.C. § 1983 (2006).  At this point the parties are waging battle in two forums: federal district court and the Kentucky Board of Tax Appeals (the "Board of Tax Appeals").  Part of the continuing legal tension here concerns defining the proper relationship between the two proceedings.

Some time ago, BellSouth moved to dismiss all existing claims in the federal case; while Plaintiffs moved for class certification and for the establishment of a discovery schedule. Recently, BellSouth and the Kentucky Revenue Department (the "Revenue Department") have submitted an Agreed Judgment to resolve the tax appeal case, and Plaintiffs have filed a petition to intervene in those proceedings.  All of these proceedings present a confluence of issues.  The pending dispositive motions and the motion for class certification are necessarily interrelated.

While the class certification meets all the outward criteria and is provisionally granted, important issues remain before it can become reality. The Court will address each issue as well as the schedule for additional briefing.

I.

In 1999, BellSouth began providing Fast-Access DSL high speed Internet access to subscribers of its traditional voice telephone service. Fast-Access is a digital subscriber line ("DSL") service, which transmits data over the local telephone network. Unlike "dial-up" Internet access services, DSL service allows customers access to the internet while still allowing them to use their telephones. From the inception of the service, BellSouth assessed a 6% Kentucky sales tax, which it collected from its customers and passed along to the Revenue Department.

In April 2002, BellSouth sent a letter to the Revenue Department, Sales Tax Section, requesting advice on whether the sale of DSL service was a "retail sale" subject to Kentucky sales tax. The Revenue Department replied by letter in October, 2002, stating that sale of DSL service is not a "retail sale" and thus should not be taxed. Three months later, the Revenue Department reversed its position "as a result of further research into the issue," and in an amended answer it directed BellSouth to return to its previous practice of assessing Kentucky sales tax on the sale of DSL service. BellSouth continued assessing tax on DSL service.

On November 24, 2004, Plaintiffs filed this complaint in Jefferson Circuit Court. Within a month, BellSouth removed to federal court based upon the presence of a federal claim. In March 2005, BellSouth moved to dismiss all the claims. In January 2005, BellSouth filed a claim for a sales tax refund with the Revenue Department, which promptly denied the claim.

2

BellSouth then filed a protest of that denial pursuant KRS 131.110, but in September 2005 the Revenue Department issued a "final ruling" that the DSL service was subject to Kentucky sales tax.  Shortly thereafter, this Court stayed these federal court proceedings to allow the Board of Tax Appeals to complete its administrative process.  BellSouth then sought a final ruling from the Board of Tax Appeals.  However, in March 2006, the Revenue Department notified BellSouth that it would no longer seek collection of the tax.

The Revenue Department and BellSouth began negotiating the terms of an Agreed Judgment to refund all sales tax collected from BellSouth DSL customers.  On October 6, 2006, BellSouth and the Revenue Department entered into an Agreed Judgment tendered to the Board of Tax Appeals.  That agreement provides for reimbursement of all taxes, by refund or credit on future charges, plus interest in excess of $6,700,000 to BellSouth customers. On October 2, 2006, Plaintiffs Clark and Kentucky Air Tool filed a petition to intervene in the tax refund action before the Board of Tax Appeals.  BellSouth has opposed the petition.  On October 16, 2006, Plaintiffs also requested this Court to enjoin the Revenue Department or the Board of Tax Appeals from affecting the return of the sales tax on internet services that BellSouth had collected.  Believing that no logical reasons counseled delay of the refunds to thousands of BellSouth customers, this Court denied that motion on October 19.  BellSouth estimates that the refunding or crediting of the taxes can be accomplished in two or three months.

II.

On November 30, 2005, this Court determined to stay temporarily consideration of Plaintiffs' federal court claims while the Board of Tax Appeals completed its own consideration of BellSouth's appeals of similar issues.  Almost one year later, the Court views its decision as

the correct course of action.

By staying consideration of Plaintiffs' claims, the Court avoided needless conflict with an ongoing state statutory process for seeking tax refunds, *see* Ky. Rev. Stat. Ann. § 131.110 (2006), which BellSouth had properly invoked.  BellSouth originally filed a claim for a tax refund with the Revenue Department.  From a denial of that claim, BellSouth sought a subsequent appeal to the Board of Tax Appeals.  The Board is vested with "exclusive jurisdiction to hear and determine appeals from final rulings, orders, and determinations of any agency of state or county government affecting revenue and taxation."  Ky. Rev. Stat. Ann. § 131.340 (2006).

Until recently filing a petition to intervene, Plaintiffs had not sought to participate in the refund action.  Indeed, the statutory language is not entirely clear about their right to do so.  However, there are good reasons to suggest that as ultimate taxpayers in this tax appeal, they are entitled to standing before the Board of Tax Appeals.  Kentucky statutes provide that the hearing officer may grant a petition for intervention if the petitioner has an interest which may be affected by the proceeding.  Ky. Rev. Stat. Ann. § 13B.060(1)(b) (2006).  Plaintiffs surely have such an interest.  Moreover, even though BellSouth is the "retailer" who is technically required to pay the sales tax collected from the "purchasers," *see* Ky. Rev. Stat. Ann. § 139.210 (2006), on prior occasions such purchasers have directly challenged sales taxes before the Board of Tax Appeals.  *See, e.g., Louisville Edible Oil Prods., Inc. v. Rev. Cabinet Commonwealth of Kentucky*, 957 S.W.2d 272 (Ky. Ct. App. 1997) (taxpayer who purchased and processed crude vegetable oil appealed to the Board of Tax Appeals a decision by the Revenue Department assessing a sales tax and denying a tax refund).

4

The Board of Tax Appeals has yet to rule on the motion to intervene.  Regardless, the availability of the Board of Tax Appeals remedy and the immediate promise of an actual refund were among the reasons why the Court is wise not to disturb those proceedings.

### III.

The parties have sufficiently discussed the conversion and fraud claims for the Court to reach some conclusions.  In some fashion or another, in fact, these two claims rest upon the assertion that BellSouth violated clearly settled law when it collected sales tax between 1999-2004 before seeking permission from the Revenue Department to stop.  Plaintiffs assert that the Internet Tax Freedom Act ("ITFA"), Pub. L. 105-277, §§ 1100-1104, 112 Stat. 2681-719, clearly prohibited states from imposing a tax on internet services, including DSL, and that Kentucky law did not require such taxation.  Moreover, Plaintiff argues that BellSouth actually knew that it had no obligation or right to pay or collect the tax on DSL services, but did so anyway.  The real story seems quite a bit more confusing.

### A.

Whether DSL services were taxable has always depended upon the precise interaction of state and federal powers and has been the subject of considerable confusion.  Federal law, through the ITFA and subsequent legislation, prohibits states and local governments from imposing sales tax on Internet access.[1]  Pub. L. 105-277, §§ 1100-1104, 112 Stat. 2681-719.  For purposes of the ITFA, "Internet access" does not include "telecommunications services."  Pub. L. 105-277, § 1104(5), 112 Stat. 2681-719.  Whether DSL service is characterized as an "Internet access" or a "telecommunications service" is apparently not an easy question to

---

[1] The ITFA placed a three-year moratorium on state and local taxation of Internet access beginning in 1998. The moratorium has been extended through subsequent legislation and remains in effect.

5

answer.  Telecommunications services are defined as the offering of telecommunications for a fee to the public, Pub. L. 105-277, § 1104(9), 112 Stat. 2681-719, and telecommunications means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(43) (2006).

The Kentucky tax code echoes the distinction existing under federal law.  Furnishing of "communications services" to a Kentucky address is a taxable retail sale, but "communications service" does not include "Internet access".[2]  Ky. Rev. Stat. Ann. § 139.100(3)(b) (2002). Internet access is not defined in the Kentucky law.  By its very nature, DSL service provides internet access *via* a communication service.  The high-speed data transmission function is an integral part of the Internet access service itself and is not dependent on the customer's traditional telephone service.  Subscribers to the service access the internet through the telephone network, though it does not interrupt their telephone use.

The application of these rules, however, is not so clear.  In determining the base on which to apply sales tax, if a vendor sells taxable and nontaxable items for a single non-itemized sale price, the entire sale price is subject to sales tax.  Ky. Rev. Stat. Ann. § 139.210(1) (2006) (if taxable goods are bundled with non-taxable services, tax must be computed on entire price). Thus, a retailer of a new technology such as DSL that bundles both a telecommunications component with internet access might reasonably assume Kentucky sales tax applies.  The Kentucky tax code compels retailers to collect sales taxes on behalf of the Commonwealth, and Kentucky law presumes that gross receipts are taxable unless specifically exempted.  Ky. Rev.

---

[2] Many of the Kentucky sales tax statutes were amended in July 1, 2004, but the taxability of BellSouth's DSL service was not affected by these amendments.

6

Stat. Ann. § 139.260 (2006).

BellSouth began collecting the sales tax at the time it initiated DSL service in 1999. When BellSouth made this decision, there appears to have been no definitive authority one way or another. Later communications between BellSouth and the Revenue Department, however, suggest that BellSouth may have had reasonable grounds to apply sales tax. In a series of conflicting letters to BellSouth in 2002, the Revenue Department struggled with whether DSL service should be considered a taxable retail sale of a bundled telecommunications service.[3] As late as 2005, the Revenue Department issued a "final ruling" that DSL service was subject to Kentucky sales tax. Even though the Board of Tax Appeals reversed the Revenue Department ruling and the Agreed Judgment ultimately granted a tax refund to Kentucky DSL subscribers, it can hardly be said that such refund was a result of a very clear directive in Kentucky law.

Nor did federal law provide the clear guidance that Plaintiff contends. In a slightly different context,[4] the Ninth Circuit held in 2000 that cable broadband internet access was not "cable service," but was a "telecommunications service" for purposes of determining FCC

---

[3] Kentucky would not be the only state to struggle with the notion of whether DSL is taxable as a communication service. BellSouth received conflicting letters from the Revenue Departments of multiple states, and at least one viewed DSL as taxable:

> ...it is my opinion that the part of the service that transports the signal from a computer to BellSouth's Internet routers remains a telephone service. While the technical aspects are more complicated, this seems no different than the way customers using a 56k-modem access the Internet except that with [BellSouth FastAccess DSL] service, [BellSouth] provide[s] the means to connect and the Internet access service for one price.
>
> It is the position of the department that the telecommunications part of the service remains taxable. If the subscribers are provided a billing that itemizes the charges for Internet access and for telecommunications, only the telephone service charge will be taxable; otherwise, it will be the position of the department that the entire charge is taxable.

Letter from Joseph W. Cowen, Dir., Sales, Use & Bus. Tax Div., Dep't of Revenue, State of Ala., to Mr. Keith G. Landry, BellSouth Corp. (August 22, 2002).

[4] In theory the question of whether DSL service is a "telecommunications" service subject to FCC regulation is different from the question of whether states may tax bundled internet and telecommunications service. In practice the two have been treated similarly.

7

regulatory authority.  *See AT&T Corp. v. Portland*, 216 F.3d 871, 877-78 (9th Cir. 2000).  The

Federal Communications Commission ("FCC") soon challenged this line of reasoning in a series

of rulings covering cable based internet access service and DSL service.  Those rulings may have

occasioned BellSouth's April 2002 letter to the Revenue Department that questioned whether its

DSL service should be subject to sales tax.

Not until 2004, with passage of the Internet Nondiscrimination Act ("ITNA"), Pub. L.

No. 108-435, 118 Stat. 2615, to extend the moratorium on taxing Internet access established by

the ITFA, did Congress clarify the definition of "Internet access" to cover DSL services.  The

new definition included telecommunications services, "to the extent that such services are

purchased, used, or sold by a provider of Internet access to provide Internet access."  Pub. L. No.

108-435, 118 Stat. 2615-2616.  It seems the primary purpose of the amendment was to prevent

states from continuing to tax DSL service.  *See* 150 Cong. Rec. E2200-04 (speech of Hon. Chris

Cannon) (noting that some states maintained the practice of taxing DSL access as

"telecommunication services" even after passage of ITFA).  Interestingly, not until June 2005,

did the Supreme Court finally determine that companies providing broadband internet services

do not provide a "telecommunications service" subject to FCC regulation.  *National Cable &*

*Telecommunications Assoc. v. Brand X Internet Serv.*, 545 U.S. 967 (2005).

While it took many years and much debate, courts apparently now agree that the sales tax

should not have applied to DSL services.

B.

Bearing all this in mind, the Court now addresses the conversion claim.  At its core, this claim involves an unlawful exercise of control.[5]  What makes it unusual, of course, is that the taking of the property (the sales tax) was performed openly under the cloak and assumption of legitimacy.

Although Plaintiffs contend that their claims are fundamentally different from those in the tax refund action before the Board of Tax Appeals, each shares the common question of whether under federal and state law the Revenue Department can impose and BellSouth collect a state tax on DSL services.  There are no real differences in the remedy afforded an individual claim.  They say only that the Board of Tax Appeals' procedures and the settlement agreement are unlikely to ensure that all taxpayers receive their reimbursement.  This Court respectfully disagrees.  As to these named Plaintiffs, the Court sees little difference between the Board of Tax Appeals' remedy and the common law conversion remedy.  For all practical purposes, the conversion claim amounts to a refund claim in a different forum.

Kentucky courts seem to support this notion.  The Board of Tax Appeals is the proper forum to challenge an unlawful tax or the denial of a tax refund.  Kentucky law requires taxpayers to pursue tax refund cases through their statutory remedies when available, and the Kentucky Supreme Court has dismissed claims for tax refunds not brought through the express

---

[5] There are seven elements of a claim for conversion: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.  *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005).

9

statutory procedure. *See Dept. of Conservation v. Co-De Coal Co.*, 388 S.W.2d 614 (Ky. 1965) (holding that since the right to a refund of illegally or improperly collected taxes does not derive from the common law but is a matter of legislative grace, taxpayer seeking refund must pursue the refund through the exclusive statutory procedure). *See also Koehler v. Commonwealth by and ex rel. Luckett*, 432 S.W.2d 387 (Ky. 1968) (holding that taxpayer's remedy in challenging Department of Revenue's classification of income, which differed from that of the I.R.S., is exclusively statutory).

Other courts have dismissed cases that have amounted to tax refund claims against retailers collecting tax on behalf of the government. *See Kaucky v. Southwest Airlines*, 109 F.3d 349 (7th Cir. 1997). In *Kaucky*, the court held that a passenger's class action against an airline for conversion and breach of contract, based on the airline's erroneous collection of a federal excise tax, was essentially a suit for refund of taxes. *See id.* at 351. Thus, that claim was subject both to removal based upon the exclusiveness of the federal tax refund procedures and to dismissal based upon the passenger's failure to proceed against the government. *See id.*

Under these circumstances and considering the clear statutory remedy for a wrongful assessment, which BellSouth initiated and through which it has obtained a pending refund, the Tax Injunction Act may bar this Court's jurisdiction over the conversion claims. Even absent such a bar, considerations of comity would still caution restraint before this Court would embark upon a potentially duplicative, disruptive and ultimately moot claim. Consequently, the claim for wrongful taxation or conversion should be dismissed.[6]

---

[6] A Texas Court of Appeals has gone a step further, declaring that a taxpayer's *fraud* claim amounted to a tax refund claim and dismissing it because the tax code provided an exclusive remedy for obtaining a refund for overcharged sales tax. *See Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330 (Tex. App. 1999). This Court views a claim for fraud as fundamentally different than a simple claim for a tax refund.

### C.

Plaintiff's fraud-based claims hinge on the assertion that BellSouth knowingly or recklessly assessed an illegal tax on its DSL service.  To succeed on these claims, plaintiff must show the six elements of fraud: (1) a material misrepresentation; (2) that is false; (3) that is known to be false or is said recklessly; (4) that is made with the inducement to be acted upon; (5) that has been acted in reliance thereon; and (6) that has caused injury.  *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky. App. 1978).  Under Rule 9(b), Plaintiffs must plead fraud with particularity, but they may aver knowledge generally.  Fed. R. Civ. P. 9(b) (2006).  In considering a Rule 12(b)(6) motion to dismiss, this Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

Since the Revenue Department has already agreed to a refund, there is no disputing that a 6% sales tax should not have been assessed on the DSL services.  Nevertheless, it seems problematic given the ambiguity in the law at that time that BellSouth "knowingly or recklessly" charged an *unlawful* tax.   The nature of DSL as a bundled service and the fact that the Revenue Department and the Revenue Departments of other states have struggled with the taxation of DSL services suggest that it will be difficult to show that BellSouth fraudulently imposed the tax.  Adding weight to the notion that uncertainty abounded was the related hotly disputed regulatory issue of telecommunications service which required a 2005 Supreme Court decision to resolve.  Moreover, that BellSouth collected this tax openly and without objection from either the Revenue Department or, for several years, from its customers, suggests the absence of

11

fraudulent intent.

Nevertheless, without further opportunity to discover BellSouth's knowledge and motives at the time, dismissal would be premature.

IV.

The parties have written much less about Plaintiffs' Kentucky Consumer Protection Act claim and their § 1983 claim.

The Kentucky Consumer Protection Act presents similar problems to Plaintiffs and the Court. The KCPA was designed to give Kentucky consumers the broadest possible protection from illegal acts. *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988). To demonstrate a violation of the Act, Plaintiffs must show that BellSouth's activity was unfair, false, misleading, deceptive, and unlawful, in violation of the Kentucky Consumer Protection Act. Ky. Rev. Stat. Ann. § 367 (2006). Since BellSouth charged the unlawful tax for three years prior to receiving any directive or guidance from the Revenue Department requiring such action, further discovery may suggest reasons why such behavior was unfair or deceptive.

None of the memoranda have paid much attention to Plaintiffs' remaining claim for deprivation of property rights under § 1983 of the Civil Rights Act. Many of the same considerations applicable to the conversion and fraud claims undoubtedly apply here. The tax refund initiated from the Board of Tax Appeals may both fully compensate the Plaintiffs for taxes paid and render the § 1983 claim moot.

The Court will set a schedule for additional briefing on these two issues.

12

V.

Plaintiffs have asked the Court to certify two classes of persons, consisting of residential consumers and commercial consumers who were charged Kentucky sales tax on BellSouth FastAccess DSL service, to pursue various claims against BellSouth stemming from the collection of those taxes.

Plaintiffs easily meet most of the outward prerequisites for class certification contained in Rule 23(a) and (b): (1) the many thousands of BellSouth customers who paid sales tax on their DSL service make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1); (2) Plaintiffs' fraud, consumer protection and § 1983 claims will present common questions of law and fact for this Court. *See* Fed. R. Civ. P. 23(a)(2); (3) the Court has every reason to believe that the claims of the current Plaintiffs are representative of those in the proposed class. *See* Fed. R. Civ. P. 23(a)(3); (4) plaintiff representatives should be able to fairly and adequately represent class interests. *See* Fed. R. Civ. P. 23(a)(4); and (5) due to the small amount of any individual recovery, this litigation can be successfully pursued only as a class action. *See* Fed. R. Civ. P. 23(b)(3). The Court does not see that BellSouth has raised any serious objection to these qualifications.

Irrespective of the foregoing analysis, one may question the efficacy of class litigation as the fairest and most efficient means of adjudicating existing claims. The Board of Tax Appeals litigation and its settlement now assures the return of close to seven million dollars ($7,000,000) in tax credits, refunds and interest to members of the proposed classes. Though Plaintiffs say that the settlement agreement does not sufficiently ensure that each and every BellSouth customer will receive their appropriate refund, the Court can see no particular reason why this is

13

so.  Rule 23(b)(3)(B) counsels the Court to consider "the extent and nature of any litigation concerning the controversy already commenced."  Fed. R. Civ. P. 23(b)(3)(B).  A number of important questions arise in this context.

The most significant issue is whether pursuit of the class action can achieve meaningful additional results for the class.  The recovery envisioned by the settlement agreement is in the process of distribution and may be completed even before potential class members are enrolled in this ongoing lawsuit.  What remains is the quite difficult task of showing damages for fraud, consumer protection or § 1983 violations on top of the refund recovery.  Because the Court cannot know whether consumers receiving the refund will view pursuing these claims as worthwhile, an opt-in class will likely be preferable.  Plaintiffs may discuss this issue in their proposal for class notification.

Plaintiffs' counsel may argue that they have already achieved meaningful results.  While the Revenue Department proceeds to distribute its credits, refunds and interest, Plaintiffs' counsel has alluded to the possibility that they deserve considerable credit for this recovery and, indeed, that they may be entitled to recovery of attorney's fees.  Perhaps the Court should consider this issue now so that attorneys or class members are not later caught unaware.  The Court has no preconception of the answer.  Nor does the Court know whether the class certification affects the analysis.  The Court will seek the advice of Plaintiffs' counsel as to whether and under what theory they intend to request attorney's fees for any portion of the tax refund resulting from the Agreed Judgment between BellSouth and the Kentucky Board of Revenue.

BellSouth does challenge the class certification on the grounds that each Plaintiff has not

14

satisfied the sixty-day notice requirement of KRS 139.771.  *See* Ky. Rev. Stat. Ann. §

139.771(1).  Michael Clark notified BellSouth by e-mail that the tax on internet access was

unlawful on July 16, 2004, over four months before the complaint was filed in Jefferson Circuit

Court.  Since the claim is common to the class of purchasers, this notice to BellSouth is

sufficient to satisfy the notice requirement of the statue.  Had the Kentucky General Assembly

intended to require individual notices by class members prior to bringing an action, it would

have used more specific language.  *See* Ky. Rev. Stat. Ann. § 134.590(6) ("No refund shall be

made unless each taxpayer *individually applies* within (2) years...")(emphasis added); *cf. City of

Somerset v. Bell*, 156 S.W.3d 321 (Ky. App. 2005) (interpreting prior version of KRS 134.590

and finding that omission of the phrase "in each case" permitted taxpayers requesting refund to

bring the claim as a class action).

 The Court concludes that provision certification of the two classes is appropriate.[7]

Pursuant to Fed. R. Civ. P. 23(g), the Court must appoint class counsel that will "fairly and

adequately represent the interests of the class."  The Court finds that Plaintiffs' attorneys are

adequate under Rule 23(g)(1)(B) and (C), and thus they may be appointed class counsel.

 The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record

---

[7] BellSouth also seeks discovery pursuant to the issues of class certification, but the Court can see no advantages to such further delay.  The issue of class certification has been fully briefed, and it is not clear what BellSouth could discover that would aid the Court in determining the propriety of certification.